ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
4695 MacArthur Ct., Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

*Attorneys for Plaintiff Nakia Porter, Individually, and on Behalf of All Others Similarly Situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NAKIA PORTER, an individual, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

JPMORGAN CHASE BANK, N.A., a national banking association organized under the laws of the United States, JPMORGAN CHASE & CO., a Delaware Corporation, and DOES 1-100, inclusive,

Defendants.

**CASE NO.:**

**CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND NATIONWIDE INJUNCTIVE RELIEF FOR:**

1. **CONVERSION**
2. **UNJUST ENRICHMENT**
3. **VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)**
4. **NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

Plaintiff Nakia Porter ("Plaintiff"), on behalf of herself and all others similarly situated, hereby alleges as follows:

## I. BACKGROUND

1. This action is brought against defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co (collectively, "Chase" or "Defendants") for their practices, policies, and customs that allow Chase to withhold funds belonging to others so that Chase can reap the earnings/benefits of those funds at the expense of the true owner(s) of the funds, thereby depriving the true owner(s) of the ability to receive earnings on those funds and/or transact with them. Most of the acts complained of in this action occurred within the Central District of California, wherein the majority of the witness are also believed to reside.

## II. PARTIES

2. Plaintiff Nakia Porter is a citizen of the State of Maryland.

3. Defendant JPMorgan Chase Bank, N.A. is a national banking association organized under the laws of the United States with its principal place of business in the State of Ohio.

4. Defendant JPMorgan Chase & Co is a Delaware corporation with its principal place of business in the State of New York.

5. The true names and capacities of defendants DOES 1 through 100, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE is in some manner responsible for the acts and occurrences set forth herein. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 100, inclusive, as well as the manner in which each DOE defendant is responsible, when the same have been ascertained.

6. Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of

the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

7. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

8. JPMorgan Chase Bank, N.A. JPMorgan Chase & Co, and DOES 1-100 shall collectively be referred to hereafter as "Defendants" or "Chase."

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in controversy is believed to exceed $5 Million and there are believed to be over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States, including the States of California and Maryland, while at least one defendant is the citizen of a different state.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## IV. GENERAL ALLEGATIONS

11. Chase is the largest bank in the United States that, on information and belief, receives tens of thousands of wire transfer requests a day, many of which are to accounts that are not Chase accounts.

12. On Wednesday, September 17, 2025, Plaintiff's counsel ("Counsel") received and deposited in a Chase bank account a check in a personal injury matter of which

$6,255,223.14 (the "$6M Funds") belonged to Plaintiff. The funds were deposited at a Chase bank branch located in Brea, CA within the Central District of California.

13. Defendant Chase provided a receipt that the $6M Funds would be available for transaction on September 19, 2025.

14. The $6M Funds were in fact available for transaction on September 19, 2025.

15. On the morning of Friday, September 19, 2025, at approximately 10:00 a.m. PT, Counsel personally went into a Chase bank branch located in Brea, CA within the Central District of California and processed a wire for $6,255,223.14 (i.e., the $6M Funds) to Plaintiff and her husband (the "Wire").

16. To process the wire, Counsel personally met with Chase banker Gabriel Sanchez ("Banker Sanchez") and the bank manager/supervisor.

17. During this time, Counsel called Plaintiff in front of Banker Sanchez and confirmed the wiring information live over the phone. Counsel then double-and triple-checked that Banker Sanchez had entered Plaintiff's wiring information correctly.

18. Counsel was assured by Chase representatives at the Brea branch that the wire should go through the same day (September 19) because the funds were available for transaction, and Counsel had processed the wire in person at a branch before 11:30 a.m. PST cut-off time for wires.

19. The Wire was to be sent to a financial institution that was not a Chase bank.

20. Had Plaintiff timely received the Wire on September 19, she would have, at a minimum, made earnings on her rightful Funds and would have been able to transact with those Funds.

21. That same day, September 19, at approximately 11:53 a.m. PT, Counsel received a call from the Chase fraud department and confirmed that the Wire was legitimate and should be sent out immediately. Counsel informed the Chase representative the following: (i) the Wire was for funds belonging to Plaintiff (the Wire recipient) for client recovery; (ii) Counsel personally initiated the Wire at a Chase branch after speaking with Plaintiff over the phone at the bank branch and confirming several times that her bank

account details were accurate; (iii) Counsel had known the Plaintiff for several years as a client; (iv) the phone number Counsel used to call Plaintiff was the same phone number Counsel had used to communicate with Plaintiff for the past five years; and (iv) there was no reason to withhold the Wire. Counsel was told that the Wire could not be reversed once sent, and Counsel repeatedly confirmed that the Wire should be sent ASAP.

22. After this call, Counsel had multiple additional calls with Chase representatives apprising them of the same information, confirming the Wire numerous times, and insisting that it be sent to Plaintiff ASAP. These calls took place at approximately 1 p.m. PT and 2 p.m. PT. During one of these calls, a Chase representative informed Counsel that she could see the "back office" had approved the wire and that it should go out. But in a subsequent call, a different Chase representative told Counsel that, *according to Chase policy*, the funds would be held for a week. The representative could provide no reasonable justification for holding Plaintiff's rightful funds for a week, stating just that it was "Chase policy." Chase did this even though Counsel had processed the Wire in person, and Counsel's account showed that the funds were fully available for transaction. Counsel informed the representative that it was unlawful for Chase to withhold or delay Plaintiff's rightful payment, but the representative said that it was "Chase policy."

23. The Wire was unreasonably withheld, depriving Plaintiff of the ability to make earning on or transact with her rightful funds. Chase instead kept the $6M Funds on its own books making earnings on those funds for itself siphoning and converting Plaintiff's earnings to itself.

24. On September 22, 2025, between 2:30 p.m. and 4:00 p.m., Counsel had at least three additional calls with Chase representatives demanding the Wire be sent but was told that it was being held back and delayed for a week without reasonable justification under "Chase policy."

25. On September 25, 2025, at approximately 12:37 p.m., Chase banker Isaiah Jennings (Banker Jennings) from a Chase branch in the Central District of California called Counsel asking Counsel the very same questions about the Wire that Counsel had answered

numerous times. Counsel provided each answer as Counsel had done with the several previous representatives that had called with the same questions, and very sternly made clear that the $6M Funds should be wired to Plaintiff ASAP. Counsel informed Banker Jennings that Chase was engaged in unlawful conversion and asked Banker Jennings to rectify it ASAP. Counsel did not hear back from Banker Jennings all day. At approximately 4:30 p.m., Counsel called Banker Jennings who did not pick up the phone but called back to inform Counsel that Chase had *unilaterally cancelled* the Wire without providing any justification for cancelling it. Banker Jennings told Counsel that Counsel would need to go back into a Chase branch and reprocess the Wire. But given the time of day that Banker Jennings provided this unwelcomed message, it was too late to go process a wire.

26. On all calls between Chase and Counsel, Chase advised that the calls were being recorded and kept in Chase's ordinary course of business.[1]

27. The very next morning, on September 26, 2025, Counsel personally went into the same Chase bank branch located in Brea, CA within the Central District of California and reprocessed the Wire to Plaintiff in the amount of $6,255,223.14. Banker Sanchez processed the wire again.

28. Due to Chase's withholding of Plaintiff's rightful funds, Plaintiff was injured in that Plaintiff was deprived of the ability to make earnings on and transact with her lawful funds. Instead, Chase unreasonably held onto those funds to siphon and convert Plaintiff's transactional rights and earnings to itself. In doing so, Chase engaged in despicable conduct acting with malice, oppression, moral turpitude, and/or conscious wrongdoing.

## V. CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons and entities in the United States of America who were entitled to a transfer of funds from a Chase account to an account that was not a Chase account whose transfer was delayed

[1] Chase should be careful to avoid engaging in spoliation and preserve this evidence.

and/or cancelled by Chase beyond the time necessary to make the transfer (the "Class").

Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

30. For purposes of the Class:

"Chase account" means any account at a Chase financial institution.

"Not a Chase account" means any account that was not at a Chase financial institution.

"Transfer" means any lawful request to transfer funds from one account to another.

31. For purposes of the Class, the relevant class period will depend on the claim at issue and may range from two to six years looking back from the date of filing.

32. Plaintiff reserves the right to expand, limit, modify, or amend the class definitions and periods stated above, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances or new facts obtained during discovery.

33. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 50,000 members of the Class.

34. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

35. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.

36. **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether, during the relevant Class Period, Chase was asked to make a transfer of funds from a Chase account to a Class member account that was not a Chase account?

b. Whether, during the relevant Class Period, Chase either delayed said transfer beyond the time necessary to make the transfer and/or cancelled it, thereby delaying the transfer to a Class member (Chase's "Transfer Delay Scheme")?

c. Whether consistent with the representations of Chase representatives and Chase's conduct alleged herein, Chase has practices, policies, or customs that allow Chase to withhold funds beyond the time necessary to transfer, thereby depriving the Class of the ability to make earnings on and transact with their lawful funds?

d. Whether Chase's Transfer Delay Scheme constitutes conversion of property of the Class?

e. Whether Chase's Transfer Delay Scheme constitutes unjust enrichment to the detriment of the Class?

f. Whether Chase's Transfer Delay Scheme constitutes an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*?

g. Whether Chase engaged in negligence in delaying the lawful transfer of funds of Class members?

h. How Chase expected to benefit from its Transfer Delay Scheme to the detriment of Class members?

i. How Chase actually benefited from its Transfer Delay Scheme to the detriment of the Class?

j. How Chase's conduct caused and continues to cause harm to the Class?

k. Whether the members of the Class are entitled to damages and/or

restitution?

l. What type of injunctive relief is appropriate and necessary to enjoin Chase from continuing to engage in its Transfer Delay Scheme?

m. Whether Chase's conduct was undertaken with conscious disregard of the rights of the Class and was done with malice, oppression, moral turpitude, and/or conscious wrongdoing?

37. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome on the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

38. This case litigated as a class action lawsuit enforces an important right affecting the public interest in that it addresses the abuses of a large and powerful financial institution that exercises tremendous control over funds deposited by members of the public from engaging in unlawful conversionary conduct that enriches the financial institution at the expense of the public and Class members. Litigating this case as a class action would confer significant benefit on Class members and the public alike by holding to account a

goliath that would otherwise go unchecked, making out to the tune of hundreds of millions at the expense of members of the public on the expectation that individual members who are harmed would be unable to retain or afford counsel.

39. **Ascertainability.** Upon information and belief, Defendants keep extensive computerized records of the accounts of their customers and all actions taken on those accounts, as well as notes and records of communications concerning those accounts through, among other things, databases storing customer requests for transfer, including all transfer details such as dates, times, outbound institution, steps taken after the request to effectuate and/or delay the requested transfers, and all communications concerning the transfer requests. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

40. The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, thus, apply equally to the California Class.

41. Plaintiff further alleges that purely legal remedies are inadequate to provide full relief because they do not provide for restitutionary disgorgement and do not prevent ongoing or future harm.

42. If Chase's policies, practices, and customs of withholding and delaying lawful transfers is not enjoined, members of the Class and United States public at large will continue to suffer future harm as described herein. This includes Plaintiff who in the future will inevitably be the recipient of more wires from Chase given that Chase is the largest financial institution in the United States and thus avoiding business with Chase is nearly impossible. Final injunctive relief is thus necessary to address the harms to Plaintiffs and the Class.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## CONVERSION

**(Against Defendants on Behalf of the Class)**

43. Plaintiff restates and re-alleges all previous paragraphs as if fully set forth in this claim.

44. Plaintiff and members of the Class had a right to possess, making earnings on, and transact with the funds that were transferred to them (the "Class Property Rights").

45. Chase substantially interfered with the Class Property Rights by preventing Plaintiff and members of the Class from having access to their rightful funds.

46. Chase did so with the intent to exercise wrongful dominion over the funds by preventing and delaying lawful transfer.

47. Plaintiff and members of the Class did not consent Chase's conduct and interference.

48. Plaintiff and members of the Class were harmed in that they were deprived of earnings on their funds that Chase siphoned to itself and were also deprived of the ability to transact with their funds for the period that Chase unreasonably interfered with access.

49. Chase's conduct and interference was a substantial factor in causing Plaintiff's harm.

50. Chase's unlawful retention of and dominion over Plaintiff and Class property was despicable conduct undertaken with malice, oppression, moral turpitude, and/or conscious wrongdoing, intentionally and willfully trampling upon the property rights of Plaintiff and the Class.

## SECOND CLAIM FOR RELIEF

## RESTITUTION FOR UNJUST ENRICHMENT BY CONSTRUCTIVE TRUST

## (Against Defendants on Behalf of the Class)

51. Plaintiff restates and re-alleges all previous paragraphs as if fully set forth in this claim.

52. Under California Civil Code § 2224, "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."

53. Plaintiff and members of the Class had a right to possess, making earnings on, and transact with the funds that were transferred to them.

54. By wrongfully detaining and delaying the transfer of Plaintiff and the Class member funds, Chase became a constructive trustee of those funds.

55. Chase benefitted from its wrongful detention and delay of funds at the expense of Plaintiff and the Class in that Chase siphoned to itself the earnings to which Plaintiff and the Class were entitled.

56. Plaintiff and the Class were harmed by Chase's conduct, which was a substantial factor in causing the harm.

57. Chase's unlawful detention of and dominion over Plaintiff and Class property was despicable conduct undertaken with malice, oppression, moral turpitude, and/or conscious wrongdoing, intentionally and willfully trampling upon the property rights of Plaintiff and the Class.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

## (Against Defendants on Behalf of the Class)

58. Plaintiff restates and re-alleges all previous paragraphs as if fully set forth in this claim.

59. California Business and Professions Code section 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition,"

including any "unlawful, unfair or fraudulent business act or practice." This claim is brought under the unlawful and unfair prongs.

60. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

61. Here, by engaging in conversion and unjust enrichment (through the wrongful detention of property to which Plaintiff and others similarly situated were entitled) as described in this Complaint, Chase has engaged in unlawful business acts and practices in violation of the UCL.

62. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

63. Here, Chase's actions constitute "unfair" business acts or practices because, as alleged above, Chase, a large financial institution with tremendous leverage and power over the public, is unreasonably withholding funds that rightfully belong to Class members to make earnings for itself that rightfully belong to Class members, thereby siphoning Class members' earnings and benefits to itself and preventing Class members from freely transacting with their rightful funds.

64. The harm to Plaintiff and members of the Class outweighs the utility of Chase's practices. There were reasonably available alternatives to further Chase's legitimate business interests, other than delaying and/or cancelling lawful transfers.

65. Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Chase's unlawful and/or unfair business practices.

66. Plaintiff, on behalf of herself and the members of the Class, seeks restitution and disgorgement of all monies received by Chase through the conduct described above.

67. Plaintiff, on behalf of herself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Chase from engaging in the policies, patterns, practices, and customs described herein, including but not limited to, putting a stop to Chase's transfer delay tactics.

## FOURTH CLAIM FOR RELIEF

## NEGLIGENCE

## (Against Defendants on Behalf of the Class)

68. Plaintiff restates and re-alleges all previous paragraphs as if fully set forth in this claim.

69. Chase was negligent in transferring Plaintiff and Class funds without unnecessary delay.

70. Plaintiff and Class members were harmed by Chase's negligence in that they were deprived of the ability to make earnings on and transact with their right funds.

71. Chase's negligence was a substantial factor in causing harm to Plaintiff and the Class both proximately and in fact.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2. For an injunction putting a stop to the unlawful described herein and ordering Chase to correct its unlawful practices, policies, and customs of detaining funds rightfully belonging to others thereby siphoning to itself the earnings to which Plaintiff and the Class were/are entitled.

3. For compensatory damages in an amount to be proven at trial.

4. For an award of restitution and disgorgement of monies to be proven at trial

that Defendants obtained because of their unlawful practices.

5. For punitive damages in an amount sufficient to punish Chase and to deter Chase from engaging in wrongful conduct in the future.

6. For an award of equitable and declaratory relief.

7. For pre and post judgment interest and costs of suit incurred herein.

8. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

9. For leave to amend based on case development and discovery.

10. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury on all triable issues.

Dated: November 5, 2025

ALMADANI LAW

By: */s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.

*Attorneys for Plaintiff, Individually and on Behalf of All Others Similarly Situated*